Victor E. HIATT, Appellant,

v.

Hon. Thomas L. CLARK, Judge, Fayette Circuit Court, Appellee,

and

Commonwealth of Kentucky, Real Party in Interest.

No. 2005–SC–000455–MR.

Supreme Court of Kentucky.

June 15, 2006.

As corrected July 5, 2006.

Sarah J. Jost–Nielsen, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Frankfort, Raymond M. Larson, Fayette County Commonwealth's Attorney, Kimberly Henderson Baird, Assistant Commonwealth's Attorney, Lexington, Counsel for Appellee.

SCOTT, Justice.

## I. INTRODUCTION

Appellant, Victor E. Hiatt, was convicted of wanton murder and tampering with evidence in 2001 and received a life sentence. In February 2004, Hiatt filed a pro se RCr 11.42 motion, alleging ineffective assistance of trial counsel. In pursuing this claim, Hiatt requested but was denied access to his entire trial file from Keith Eardley, a staff attorney for Fayette County Legal Aid who had represented Hiatt during his trial. Eardley withheld certain materials from the file, which he claimed to be "work product." Hiatt then filed a petition for writ of mandamus in the Court of Appeals, which denied the writ. Hiatt now appeals to this Court as a matter of right, seeking a writ to compel production of his entire trial file for use in his pending RCr 11.42 motion.

For the reasons set forth herein, we reverse the ruling of the Court of Appeals and remand with instructions for the Court of Appeals to grant the writ of mandamus.

## II. FACTS

Appellant Hiatt was convicted in September 2001 for wanton murder and tampering with physical evidence. He received a life sentence, and both the conviction and sentence were affirmed on direct appeal in an unpublished opinion by this Court, *Hiatt v. Commonwealth,* 2003–SC–000902–MR (rendered September 13, 2003, designated "Not to be published"). On February 2, 2004, Appellant filed a pro se motion under RCr 11.42, alleging ineffective assistance of his trial counsel, Hon. Keith Eardley, a staff attorney for Fayette County Legal Aid. Shortly thereafter, the trial court appointed an attorney with the DPA to represent Appellant Hiatt in his post-conviction proceeding.

On March 9, 2004, Hiatt, through counsel, requested that Eardley produce Appellant's entire file. Initially, Eardley informed Appellant's post-conviction counsel that the file had been lost. Appellant claims that, as a result, his post-conviction counsel had to recreate as much of the original file as possible through other means and also had to file for and receive an extension of time from the circuit court to supplement any claims. However, in attempting to recreate the file, Appellant's counsel discovered that most of the witnesses had moved and the police records at the time were incomplete. Five days before Appellant's deadline to file a supplement and almost five months after the initial request for the file, Eardley informed Appellant's new counsel that the file may exist, which prompted Appellant's counsel to file a *Notice–Motion–Order for Trial Counsel to Produce File* on August 17, 2004. In response, Eardley found the file and granted Appellant access to part of the file, but retained the rest, which he characterized as work product.

On September 15, 2004, Eardley submitted a memorandum to the trial court, claiming to be a client of the Commonwealth. Apparently, Eardley reasoned that the request for his work product constituted discovery to which Appellant was not entitled in an RCr 11.42 motion. Eardley further argued that to grant Appellant access to the work product would violate defense counsel's right to keep secret from his client negative comments he may have written about his client, Appellant Hiatt.

During a hearing held by the trial court on September 17, 2004, Eardley asserted the attorney-client privilege when Appellant's counsel asked the trial court to inquire into whether Eardley had shared the work product or discussed the case with the Commonwealth. The trial court did

not resolve this issue[1] and questioned Appellant's post-conviction counsel as to how it could make an allegation of ineffective assistance in RCr 11.42 proceedings when it had conducted no investigation. Indeed, that question is central to Appellees' argument as to why it needed the work product contained in Appellant's file. In denying Appellant's motion, the trial court relied on several Kentucky Bar Association ethics opinions dealing with client files in civil matters in holding that the work product did not have to be turned over to Appellant.

Then, on March 22, 2005, Appellant filed a writ of mandamus with the Court of Appeals in which he sought to have the Court of Appeals compel the trial judge to order Eardley to produce the work product. On May 11, 2005, the Court of Appeals denied the writ on two grounds. First, the Court of Appeals found that Appellant was not entitled to the work product, reasoning that a request for work product in an RCr 11.42 motion was equal to a request for discovery, which is not authorized in post-conviction proceedings. *See Haight v. Commonwealth*, 41 S.W.3d 436, 445 (Ky.2001). Second, it found that a writ was inappropriate in this circumstance because an adequate remedy existed on appeal.

### III. ANALYSIS

#### A. A writ of mandamus was an appropriate remedy.

■ Initially, we must address the correct standard by which a writ in this instance is to be analyzed by the court in which such relief is sought. In *Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky.2004), this Court stated the rule, in pertinent part, to

be: "A writ of prohibition *may* be granted upon a showing that … the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted." (Emphasis in original).

■ In its order, the Court of Appeals stated that "it is clear Hiatt is unable to demonstrate that he satisfies the criteria for obtaining a writ of mandamus." The Court of Appeals found that Hiatt was "simply requesting discovery from Eardley concerning the actions Eardley had undertaken in representing Hiatt before and during the September 2001 jury trial." Although the Court of Appeals is correct that discovery is not authorized under Kentucky law in an RCr 11.42 action (or other post-conviction proceeding for that matter), we note that Appellant is not seeking discovery. Rather, Appellant is seeking to obtain that which is his in the first place—his file.

■ Furthermore, the Court of Appeals concludes that a writ of mandamus is the "incorrect vehicle" for presenting these issues and that Appellant Hiatt has an adequate remedy by appeal by stating that "[i]f Hiatt is ultimately unsuccessful in his post-conviction proceeding, he can appropriately present the issues contained in this petition to this Court by means of a direct appeal." We do not agree.

If Appellant were forced to make these arguments in a direct appeal, he will not have the benefit of being able to present the information contained in the "work product" to the Court of Appeals as the trial court will be unable to preserve this in the record for appellate review. Thus,

---

1. Yet, the trial court twice stated that Mr. Eardley was not a client of the Commonwealth.

the only appropriate remedy available for Appellant in this situation is to seek a writ in order to compel the trial court to order Eardley to divulge the entire contents of Appellant's file. Appellant correctly assumes that even if a writ is inappropriate in this instance, the trial court should still be compelled to review, in camera, the substance of Appellant's file that Eardley has characterized as work product. This is the only way in which the issue may be properly preserved for appellate review. We do not think, however, that this route is necessary as we find Appellant has met the requirements necessary for the granting of the writ.

In this case, Appellant has shown that the trial court is acting erroneously, though within its jurisdiction, and that a remedy by appeal is inadequate. Furthermore, without the relief requested in the form of a writ, Appellant would suffer irreparable injury in that he would be foreclosed from presenting an adequate record on direct appeal, assuming he is denied post-conviction relief, which contains the substance of his file characterized as "work product." Thus a writ of mandamus is the most appropriate remedy in this situation.

## B. Entitlement to work product part of client's file.

Having found a writ of mandamus to be the appropriate remedy here, we now address whether the Court of Appeals properly concluded that Appellant was not entitled to the work product and find the Court of Appeals erred in holding that Appellant was not entitled to the work product in his file as Appellant, as a criminal litigant, was clearly entitled to the entire contents of his file, including that which is characterized as "work product."

As previously discussed, in denying the writ, the Court of Appeals held that Appel-

lant's request for the "work product" was equal to a request for discovery, and as such, the request is specifically prohibited by *Haight, supra.* However, as Appellant correctly points out, Eardley would have to be a client of the Commonwealth for his request to constitute discovery. This has been specifically denied by the Commonwealth, and the trial court specifically found that Eardley was not the Commonwealth's client.

Although the Kentucky Bar Association (KBA) has issued several ethics opinions on client files, those opinions do so only in the context of a civil case and under different facts. Here, we have a criminal defendant who is contesting his conviction on a claim of ineffective assistance of counsel. The difference between the two lies in the nature of the action as well as the circumstances attendant to such a request.

Most pertinent to this case is KBA Ethics Comm., Ethics Opinion KBA E–424 (2005). In this ethics opinion, the Committee addressed the question of whether or not a lawyer who terminates his/her relationship with a private law firm to practice elsewhere may take the files of current clients whom the departing lawyer is representing. In giving a "qualified yes" answer, the Committee stated that "[a]s a general rule, client files and property must be handled in accordance with the client's wishes and this is a matter that should be addressed in conjunction with the client's decision regarding future representation." KBA Ethics Comm., Ethics Opinion KBA E–424 (2005). Further, the Committee suggested that where a client has paid his former attorney or firm for specific work, i.e. "work product," the client is entitled to that for which he has paid.

Thus, where an attorney is paid for that which could be considered "work product," the client is entitled to that por-

tion of the file. In this case, Appellant was represented by an attorney from Fayette County Legal Aid, whose fee services are paid from other sources, rather than the client—but paid for, nevertheless. Thus upon termination of representation, Appellant, upon request, was entitled to the entirety of his file, work product included.

A review of the record indicates that the Fayette Circuit Court relied on KBA E–395, as well as other previous ethics opinions, in denying Appellant's request to compel Mr. Eardley to produce the work product. Yet, these opinions dealt with facts involving the narrow issue of whether an attorney could retain his "work product" where the client had not necessarily paid for the services. Furthermore, these opinions were addressing questions within the context of civil matters, not criminal defendants seeking post-conviction relief.

■■■■■ The work product privilege provided in CR 26.02(3)(a) is nearly identical to that contained in Fed.R.Civ.P. 26(b)(3) and provides that the court "shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." CR 26.02(3)(a). "The work-product doctrine is designed to protect an adversary system of justice," *Morrow v. Brown, Todd & Heyburn*, 957 S.W.2d 722, 724 (Ky.1997), and, generally, has its roots in the United States Supreme Court decision in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). It is meant to protect an attorney, but not from his own former client, and it does not override questions of ownership.

We note other jurisdictions that have addressed the same issue in the context of the federal rules. For example, in *Spivey v. Zant*, 683 F.2d 881, 885 (5th Cir.1982), the Fifth Circuit Court of Appeals held

that "the work product doctrine does not apply to the situation in which a client seeks access to documents or other tangible things created or amassed by his attorney during the course of the representation." *Spivey*, of course, was decided in the context of a civil case where the constitutional rights to adequate representation were not as attendant as they are in a criminal case such as the one here.

The same year the decision in *Spivey* was rendered, the United States Court of Military Appeals addressed the same issue before this Court. In *United States v. Dupas*, 14 M.J. 28 (1982), the appellant alleged ineffective assistance of counsel, claiming his trial attorney failed to call a possible alibi witness at his rape trial. Appellant Dupas then sought access to his trial attorney's file in order to determine what the attorney had done on his behalf. Trial counsel refused to grant Dupas and his post-conviction counsel access to the files or information about tasks performed in defending the case. The court, however, noted that "the 'work product privilege' applies only against third persons and cannot be invoked against the client himself— or against his agent." *Id.* at 31 (citations omitted). The court did, however, recognize two limitations to this holding. First, if reproduction costs are incurred, the client must pay those costs. Second, if information has been provided to the attorney in confidence, such as information in a presentence report, then that information must be kept confidential. As Appellant has noted, Eardley has not offered either of these reasons as justification for his refusal to give Appellant access to his entire file.

In a similar case, the United States Court of Appeals for the Armed Forces held in *United States v. Dorman*, 58 M.J. 295 (2003), that regardless of whether there is a claim of ineffective assistance of

counsel, trial counsel must grant appellate counsel access to the case file upon request. The court stated further:

> In short, trial defense counsel maintains a continuing obligation to the client beyond the trial's conclusion, which includes providing reasonable assistance where permitted and refraining from acting in a manner inconsistent with the client's right to effective assistance of counsel on appeal. Implicit in both the right to appeal and counsel's duty of loyalty is the understanding that trial defense counsel will not interfere with appellate defense counsel's representation, and to the extent necessary and possible, will assist appellate defense counsel in preparing the appeal.

*Id.* at 298.

 The American Bar Association has also recognized the continuing duty of trial defense counsel. An attorney's duty of loyalty and duty to advocate for the defendant do not terminate upon a defendant's conviction. *See* ABA Standards for Criminal Justice, Defense Function Standards and Commentary 4–8.2, 4–8.4, 4–8.6 (3d ed.1993). Although the ABA Standards contemplate that some defense attorneys may represent the same client at trial and throughout the appeals process as well as post-conviction proceedings, the resounding message is that defense attorneys, because of their intimate knowledge of the trial proceedings and their possession of unique information regarding possible post-conviction claims, have an obligation to cooperate with their client's attempts to challenge their convictions. ABA Standards for Criminal Justice, Defense Function Standards and Commentary 4–8.2, 4–8.5 (3d ed.1993).

 Finally, we reiterate that Mr. Eardley asserted the work product privilege on his own behalf. The Commonwealth has thus described Mr. Eardley as someone who "may be adversely affected by the relief sought," CR 76.36(8), and thus he should be named as a Real Party in Interest in the Original Action. We believe these assertions have no merit at this late stage. The possibility that Mr. Eardley may be adversely affected if he turns over the work product to Appellant is no more probable than the fact that he may be exonerated of any claims of ineffective assistance.

We do not, by this opinion, intend to establish any sweeping "ownership rule" by which any party, in connection with non-criminal litigation, may lay claim to any matter connected with his own case, or file, however tenuous. The facts of this case provide a specific scenario in which work product, properly characterized as such, may be requested and obtained by a former criminal client where that criminal defendant now seeks post-conviction relief alleging ineffective assistance of counsel and therefore needs his file.

## IV. CONCLUSION

For the reasons set forth herein, we hold that a writ of mandamus is the most appropriate form of remedy available to Appellant and find that he is entitled to the entirety of his client file from Mr. Eardley, including work product materials, and therefore we hereby grant the relief sought. Thus, the matter is remanded to the Court of Appeals with instructions to order Hon. Thomas Clark, Judge, Fayette Circuit Court, to order Mr. Eardley to provide the entire contents of Appellant's file, including materials characterized as "work product," to Appellant consistent with this opinion.

LAMBERT, C.J.; COOPER, GRAVES and JOHNSTONE, JJ., concur.

ROACH and WINTERSHEIMER, JJ., dissent because defense counsel was not properly before the court and discovery is not allowed in an RCr 11.42 action because it is a vehicle only for airing known grievances. See *Haight v. Commonwealth*, 41 S.W.3d 436 (Ky.2001).